UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUDHEER RAO MOTURI,<br><br>Petitioner,<br><br>v.<br><br>NATHALIE ASHER, Director of the Seattle Field Office of U.S. Immigration and Customs Enforcement; et al.,<br><br>Respondents. | CASE NO. C19-2023 RSM-BAT<br><br>ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

Petitioner Sudheer Rao Moturi, a native and citizen of India, is detained by U.S. Immigration Customs and Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, who recently learned that he has Behcet's, an autoimmune disease, contends that he is at a heightened risk of serious illness or death should he contract COVID-19. Petitioner further argues that Respondents[1] are not taking adequate steps to

---

[1] The Respondents are U.S. Immigration and Customs Enforcement; Nathalie Asher, Director of the Seattle Field Office of ICE; Matthew T. Albence, Deputy Director and Senior Official Performing the Duties of the Director of ICE; and Steven Langford, Warden of the NWIPC. *See* Dkt. #15 (Am. Pet.) at 1.

ORDER – 1

protect him from the serious risks of COVID-19 and are thereby violating his constitutional rights to reasonable safety and freedom from punishment while civilly detained.

Currently before the Court is Petitioner's motion for a temporary restraining order ("TRO") directing his immediate release from custody. Dkt. #15 (Mot.). Respondents oppose the motion. Dkt. #30 (Opp.). At the direction of the Court, Petitioner filed a reply brief and supplemental evidence. Dkt. #34. Having considered the parties' submissions, the balance of the record, and the governing law, the Court DENIES Petitioner's motion.[2]

## II. BACKGROUND

Petitioner, who is 40 years old, has lived in the United States for more than thirty years but has been held in ICE custody at the NWIPC for the last three and a half years. Dkt. #26 (Petitioner Decl.) at ¶ 1. Petitioner entered the country with his family as a lawful permanent resident in September 1987. Dkt. #30-8 (Bostock Decl.) at ¶ 45. Having grown up in the U.S. since his initial entry, Petitioner is fluent in English. Petitioner Decl. at ¶ 2. He is college educated and has a wife and children living in Oregon. *Id.* at ¶¶ 2, 14.

Petitioner also has a criminal record after being convicted of two controlled substances violations in October 2008.[3] Bostock Decl. at ¶ 46. Petitioner was not forced to serve prison time for the offenses and fulfilled his suspended sentences and probation. *Id.* After Petitioner

---

[2] Petitioner's request for oral argument, Mot. at 1, is DENIED. The parties have thoroughly briefed the issues and oral argument would not be of assistance to the Court. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (court may deny request for oral argument when parties submit briefs to the court); Local Rules W.D. Wash. LCR 7(b)(4).

[3] "Petitioner was convicted in the District Court of Nevada, in and for Clark County . . . for the offense of possession of a controlled substance with intent to sell . . . and sale of a controlled substance . . . . For each offense he was sentenced to 36 months in prison (suspended) and 24 months on probation." Bostock Decl. at ¶ 46.

ORDER – 2

1  had served his suspended sentence, fulfilling his debt to society, he was detained by ICE in
2  August 2016, and ICE commenced removal proceedings because of his felony convictions.

3  On May 17, 2017, an Immigration Judge determined that Petitioner was removable.
4  Bostock Decl. at ¶ 47. Petitioner sought relief from removal, requesting withholding of removal,
5  asylum, or protection under the Convention Against Torture. But, on August 10, 2017, an
6  Immigration Judge denied Petitioner requested relief. *Id.* at ¶ 48. Petitioner appealed to the
7  Board of Immigration Appeals, arguing that his felony convictions do not make him removable,
8  but his appeal was dismissed on February 19, 2019. *Id.* at ¶ 49. Petitioner then sought review
9  before the Ninth Circuit Court of Appeals, which stayed his removal. *Id.* at ¶ 50. His petition
10 for review remains pending. *Moturi v. Barr*, No. 19-70518 (9th Cir.).

**III. DISCUSSION**

**A. Legal Standard**

The standard for issuing a temporary restraining order ("TRO") is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions

ORDER – 3

require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

### B. Likelihood of Success on the Merits

Petitioner argues that his continued detention in conditions that present an unreasonable risk of serious illness or death violate his Fifth Amendment substantive due process rights to reasonably safe conditions of confinement and to conditions not amounting to punishment.[4] The Court considers each in turn.

### 1. Reasonable Safety

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).[5] The government thus violates the Due Process Clause if it fails to provide civil detainees with "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 200. The Ninth Circuit has analyzed such conditions of confinement claims under an objective deliberate indifference standard. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)

---

[4] Petitioner is protected by the Fifth Amendment because he is a federal civil detainee. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

[5] In *DeShaney*, the Supreme Court analyzed the petitioners' rights under the Fourteenth Amendment. *See* 489 U.S. at 194–95. Fifth Amendment due process claims and Fourteenth Amendment due process claims are analyzed in the same way. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976).

ORDER – 4

(adopting objective deliberate indifference standard based on *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015), to evaluate failure to protect claim brought by pretrial detainee); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (applying *Castro*'s objective deliberate indifference test to pretrial detainee's claim that jail violated right to adequate medical care); *Smith v. Washington*, 781 Fed. Appx. 595, 597 (9th Cir. 2019) (holding that *Castro*'s objective deliberate indifference test applied to civil detainees' conditions of confinement claim alleging that state officials violated their constitutional rights by exposing them to environmental tobacco smoke); *see also Habibi v. Barr*, No. 20-618, 2020 WL 1864642, at *3 – *4 (S.D. Cal. Apr. 14, 2020) (applying *Castro*'s objective deliberate indifference standard to the petitioner's reasonable safety claim based on COVID-19). The elements of such a claim are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071.

The Court need only address the second element to conclude that Petitioner fails to establish a likelihood of success on the merits. In *Pimentel-Estrada v. Barr*, Case No. C20-495RSM (W.D. Wash.), the Court recently considered similar arguments from a NWIPC detainee who, due to his age and underlying health conditions, was at high risk of serious illness or death if he contracted COVID-19. *See id.*, Dkt. #51. Because the detainee was in the high-risk category, the Court concluded that he had established the conditions at the detention center posed a substantial risk of serious harm. *Id.* at 25–31. However, in Petitioner's case, a factual

ORDER – 5

dispute prevents the Court from concluding that he is at a "substantial risk of serious harm" and from concluding that he is likely to succeed on his reasonable safety claim. *See Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir.1986) ("In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'") (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964)).

The parties do not dispute that Petitioner has Behcet's disease. *See* Dkt. #30-3 (Malakhova Decl.) at ¶ 30. Rather, they dispute whether Behcet's compromises Petitioner's immune system such that he is at a "high-risk" under CDC guidelines. Petitioner provides expert opinions that Behcet's disease places "him at exceptional risk, as he possesses a compromised immunity system that will be ill-equipped to deal with [the] devastating COVID-19 virus." Greifinger Decl. at ¶ 34.b; *see also* Dkt. #28 (Hays Decl.) at ¶¶ 3–4. Further, Petitioner submits evidence that his immune system may be "dampened" because of the medications he has been prescribed to address his Behcet's. Hays Decl. at ¶ 3.

For Respondents, Dr. Sheri Malakhova, one of the doctors providing medical care at the NWIPC, testifies that the diagnosis is of little concern because it was "primarily because he experiences frequent canker sores in his mouth. . . . [and has] manifested with skin lesions on the palms of his hand due to this condition." Malakhova Decl. at ¶ 30. Dr. Malakhova explains that "[t]he disease symptoms vary from person to person and may range from mild to severe." *Id.* at ¶ 31. Here, Dr. Malakhova testifies that Petitioner's "disease has been quite limited with little to no involvement of other commonly found" lesions. *Id.* at ¶ 32. Accordingly, Dr. Malakhova concludes that "Petitioner's condition does not place him at higher risk regarding the SARS-CoV-2 viral infection causing COVID-19 and that Petitioner's condition does not meet the medical criteria to be considered for release from ICE custody on that basis." *Id.* at ¶ 34.

ORDER – 6

On this record, the Court cannot conclude that Petitioner is likely to prove that his condition places him at a "substantial risk of serious harm." First, Dr. Malakhova's conclusion must be given some credence as she has been involved in Petitioner's medical care while he has been detained. *See* Dkt. #16-18 at 2 (indicating modifications to Petitioner's medical records contemporaneous to his diagnosis of Behcet's); *but see* Malakhova Decl. at ¶ 30 (Dr. Malakhova specifying that "[i]n preparation for this declaration, *IHSC*[6] reviewed Petitioner's available records") (emphasis added); *id.* at ¶ 34 (Dr. Malakhova opining on severity of disease after "careful review of *Petitioner's clinical manifestations of Behcet's Disease*") (emphasis added).

Conversely, Dr. Hays' expert opinions are based on the fact that she has previously "spoken to [Petitioner] at the [NWIPC] about his symptoms and his illness." Hays Decl. at ¶ 3. While Dr. Hays may have a strong basis for her opinion, she testifies only that Petitioner "has experienced many of the symptoms but has not had sufficient evaluation of his disease to know if his internal organs are affected" and that he is using two medications that "can dampen the immune system." *Id.* Dr. Hays does not conclude that Petitioner is immunocompromised.

Dr. Greifinger, by contrast, does opine that Petitioner is immunocompromised. But the Court does not find his testimony persuasive. Dr. Greifinger declares that Petitioner's Behcet's "places him at exceptional risk, as he possesses a compromised immunity system that will be ill-equipped to deal with devastating COVID-19 virus." Greifinger Decl. at ¶ 34.b. But Dr. Greifinger's opinion is based upon his review of the "factual claims of [Petitioner's] medical conditions made in" Petitioner's Petition. *Id.* at ¶ 34. For its part, Petitioner's Amended Petition provides only conclusory allegations, including that Petitioner Behcet's "places him at exceptional risk, as he possesses a compromised immunity system that will be ill-equipped to

---

[6] IHSC refers to ICE's Health Service Corps, which provides medical care in some ICE detention facilities, including the NWIPC.

ORDER – 7

1  deal with devastating COVID-19 virus." Am. Pet. at ¶ 55.  Dr. Greifinger's opinion is overly

2  conclusory to say the least.

3        The Court is sympathetic to the fact that Petitioner is unable to choose his own healthcare

4  providers and is not at liberty to be fully evaluated by non-IHSC doctors.  Yet the lack of

5  competent medical testimony as to the risk Petitioner faces on account of his Behcet's precludes

6  the Court from finding a substantial risk of serious harm at this stage.  Accordingly, the Court

7  concludes that Petitioner has not demonstrated a likelihood of success on the merits of his

8  reasonable safety claims.[7]

9        **2.  Punitive Conditions of Confinement**

10       Conditions of confinement violate a civil detainee's Fifth Amendment due process rights

11 when the conditions "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535

12 (1979); *see also Kingsley*, 135 S. Ct. at 2473–74.  A petitioner can demonstrate punitive

13 conditions by showing that the challenged condition is: (1) expressly intended to punish or (2)

14 not rationally related to a legitimate government objective or is excessive to that purpose.  *Id.*;

15 *see also Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (holding that conditions are

16 punitive where they are "employed to achieve objectives that could be accomplished in so many

17 alternative and less harsh methods").  Petitioner raises only the second test, arguing that the risk

18 he faces of serious illness or death from COVID-19 is not reasonably related to or is excessive

19 in relation to a legitimate governmental interest. Mot. at 17.

20       But, as with his reasonable safety claim, Petitioner fails to demonstrate a likelihood of

21 success on his punitive conditions of confinement claim due to the same disputed issues of fact.

22 Petitioner does not establish that he is likely to prove that his medical history puts him at risk for

---

[7] Because this issue is dispositive, the Court does not address the remaining *Winter* factors.

ORDER – 8

serious illness or death from COVID-19.  Because he cannot establish a likelihood of success on the merits of his punitive conditions of confinement claim, the Court need not address the remaining *Winter* factors and a TRO will not issue.

### IV.     CONCLUSION

The Court DENIES Petitioner's Motion for a Temporary Restraining Order.  Dkt. #15.

DATED this 30th day of April, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 9